Good morning. My name is David Dow and I represent the appellant, Cynthia Sands. I would like to reserve three minutes for rebuttal. That's granted Mr. Dowling. Thank you. Per this court's directive, we are dealing with a rather limited and very narrow issue here. And that is an issue that in its broadest sense is something that this court is very familiar with. That is the degree of immunity to which a prosecutor is entitled. Very narrowly, the facts are that there was, after the first arrest of Cynthia Sands, she called the prosecutor from her home in Florida, the prosecutor is in Pennsylvania, and said, I will return to Pennsylvania now that I have been arrested and made bail. Whenever you want me to, let me know when the preliminary hearing is scheduled. She hears nothing. The summer goes by. The next thing she hears is that in October, she doesn't know in October, in November, she is re-arrested on the same charges based upon a governor's warrant from the state of Pennsylvania. A warrant which the complaint alleges was knowingly prepared falsely by the district attorney of Columbia County, Mr. Norton. So factually, there was . . . Did you say, is there a conflict of interest issue in this case because she had consulted with Mr. Norton, or he had represented her? Is that not correct? That is correct, Your Honor. And in fact, there is case law to suggest that if there's a conflict of interest, a prosecutor is not entitled to absolute immunity. What happened was, back in 1997, when the original breach of contract occurred with Cynthia Sands concerning the sale of the business, she consulted the district attorney in his capacity as a private attorney. He is a part-time prosecutor, part-time private attorney. She reviewed the facts of the case with him. He said to her, according to the complaint, I think you have a meritorious case. I think that there was a clear breach of contract, and I think that you are the victim of fraud, but I can't represent you. Mr. Donovan, he did not represent her at that point. Am I correct? You are correct. All right then. Yes, and isn't it true also that in August of 2004, your client was represented by counsel and advised the district justice to tell him about when the arraignment for a preliminary hearing would be held? That is correct. He spoke with the district attorney and the district justice. She was represented by counsel in Florida and counsel in Pennsylvania. So before the governor's warrant was issued, she had counsel available to her? That is correct. She had counsel in both states. And isn't it the responsibility of the district justice to schedule the arraignment or the warrant occurred between her attorney and the district justice? The complaint does allege... May I say that the affidavit or the transcript of the hearing before the district justice in December had a statement from your client's attorney at that time. I sent the court a letter to you that I represented Cynthia Sands and asked that I be notified when a preliminary hearing is scheduled. Now that's in one of the exhibits attached to your complaint. I think that was an exhibit, Your Honor. Yes, that's what he said. It was an exhibit attached I believe to the motion to dismiss, but an exhibit nevertheless. It's before us. Yes, it is. Okay. Did you want to follow that up, Joe, with another point? Well, at the point where the governor's warrant was issued, she is represented by an attorney. She should have been told by that attorney that she had to appear for an arraignment before anything further would proceed. Is that not correct? Well, what the complaint alleges is that the plaintiff herself spoke with the district attorney and her lawyer said to the district attorney, tell us when that date is and we will come back for that arraignment and for that preliminary hearing. Is it your position that she was never told when the arraignment was? She was never told. In fact, an arraignment and a preliminary hearing was never scheduled. Okay. But the problem begins, the real problem begins when the district attorney signs the application for the governor's warrant knowing that there are facts in that application that are incorrect and false. He knew that she was not a fugitive. He knew where she was, yet he signed the application saying that those facts were true. Now, excuse me for a minute. Joe, did you have another, I can't see you, so did you have another question to follow up or can Mr. Dowling continue? Well, I think this further statement from her counsel is important. He said, unfortunately, there was a miscommunication and Ms. Sands was never informed of a hearing that was still picked up on the warrant. It's still not, I'm still not sure how that happened, to be honest with you. He said there was a miscommunication involved. There was some miscommunication and Ms. Sands was never informed of a hearing. Okay. So you have a situation where her lawyer advised the district justice that he was representing Ms. Sands and that he requested to be notified of a hearing and he was never notified. Okay. So, and I think Mr. Dowling's point is that she wasn't a fugitive because, I think his point is she shouldn't have been characterized as a fugitive because she was never notified of an arraignment date and therefore didn't appear. I think that's his point. And that the DA knew she wasn't a fugitive. That is correct. There are really two issues here. One is whose responsibility was it to schedule this hearing? The more important and the overriding issue is the false statements in the application for the governor's warrant. Because that, I submit, is very close to the facts in the Supreme Court case of Kalina versus Fletcher. In that case, the Supreme Court said that false statements by a prosecutor in an affidavit of probable cause do not qualify the prosecutor for absolute immunity. It qualifies only, it should only be qualified immunity. Was Mr. Norton acting in his prosecutorial capacity or in his administrative capacity? Is that the issue? It is the issue. I submit there might be a subgrouping of administrative capacity because the Supreme Court in the Kalina case said that if the prosecutor is serving in his quasi-judicial function, there's absolute immunity. If he's serving in some other function, he's qualified. What the Supreme Court in the Kalina case said was, there, when the prosecutor verified the facts in the affidavit of probable cause, he was acting as a complaining witness. Did you cite Kalina in your brief? Unfortunately not. Well, there was a major distinction on Kalina because, as you pointed out, he was simply a witness. In this case, the district attorney was not a witness. He was acting in his official capacity. I think the Supreme Court made that distinction clear in the opinion where it excluded from consideration several other documents that the district attorney had signed. That is correct, but when the district attorney in that case verified the facts as justifying an arrest, then the Supreme Court said he had crossed over and become a witness. This court has said, most recently in the Light case, that we need to look at the function that the prosecutor was performing at that time. Here we believe that the function that the prosecutor was performing was not as a prosecutor in a quasi-judicial role, but more as a witness or administrator in filing the request for the governor's warrant. Taking the testimony or the facts of the complaint as true, he knew that the facts in that application were false. Not only did he know that it was false when it was issued, but soon after she was picked up and held for over 19 days without a right to bail, he was told during that time that he had made a mistake and he still refused to rescind the warrant. Could we go back to the question I started to ask? Did you ever raise the issue of the possible conflict of interest? It is raised in the complaint, Your Honor. Yeah, but did you raise it at the time? In other words, at the time that these events were happening, did you say, Mr. Norton shouldn't be prosecuting this matter because he had some kind of relationship, counsel, professional relationship with Ms. Sands? Your Honor, I did not represent Ms. Sands at that point. Was it raised? I do not know if it was raised or not. I don't know. I know it is set forth in the complaint. That much I can tell you. Okay, go ahead. You still have a little time. Thank you. Your Honor, with respect to whether we are dealing with qualified immunity or absolute immunity, the Supreme Court in Burns v. Reed remarked that where an official could be expected to know that his conduct would violate statutory or constitutional rights, the official should only be accorded qualified immunity. That's another case you didn't cite in your brief. I have the list of cases in front of me. Okay. I mean, let me make it clear to all counsel in the courtroom that we disapprove of reliance on cases that are not given to us in the briefs. We spend a lot of time on the briefs. Go ahead, Mr. Brown. Your Honor, to conclude, I would say that when the district attorney filed the application for a government warrant knowing that it was false, he was not serving in a quasi-judicial capacity and he should only be entitled to qualified immunity. I think we understood. Joe, did you have any questions at this point? Nothing further, thank you. Okay. James? Yes. Okay, we'll hear you on rebuttal. Thank you. We'll hear from counsel for the athlete. Good morning, Your Honors. My name is Chester Corse. I represent District Attorney Norton in this proceedings. I'd like to address a couple of actual issues in response to the argument made by Mr. Downing. First of all, I don't see anywhere in the complaint any allegation that anybody was ever requested to withdraw the fugitive warrant. As far as I know, that's a fact that's not before the court in this proceeding. There's another fact that's not before the court in this proceeding, and that is if you look carefully, you'll see that in the conversations between Mrs. Stanz and District Attorney Norton, there's no indication that District Attorney Norton ever agreed to anything. Well, he processed the fugitive warrant, right? Oh, he did, yes. And as I understand Mr. Downing's point, and that's why we had argument in this case, because we're interested in this point, the complaint says that Mr. Downing knew that she wasn't a fugitive, that she would come when she was requested. She was never requested. And as a result of the fugitive warrant, she stayed in jail, which is a pretty big thing. I wouldn't like that to stay in jail, nor you. It goes right to the heart of the absolute immunity issue. If there is absolute immunity, those facts, as egregious as we all may agree they are, are not sufficient to state a cause of action. That's the issue, though. That's the issue. The issue is whether in processing a fugitive warrant that allegedly contains false information, allegedly, is the prosecutor entitled to absolute immunity or qualified? My guess is, if we got to qualified, probably we'd get qualified immunity, but we don't know that. That's a factual issue that usually goes to a juror at fire effect. So, why should he get, I guess the question we ask you is, why should he get absolute immunity? Because he's performing his prosecutorial duties, and the functional test, as the Ember case says, that when he's performing prosecutorial duties, he has absolute immunity, as opposed to qualified immunity. He's not investigating anything. He hasn't investigated anything. He's certainly not an administrator. Why? Why isn't trying to get somebody arrested and to court not an administrative function? Well, I think that's a crucial part of the prosecution, ma'am. I don't think it's an administrative function at all. Well, that's what we have to decide. So, why isn't it an administrative function? It isn't an administrative function because the only one that can apply for a fugitive warrant through the governor's office is a district attorney in the county that's involved, and that's what's happened here in this particular application. In addition to that, you have to determine when the time is that the respective comments are being made. It's unclear from the allegation whether the time that's being addressed is at the time that the application is made, which is in the fall of 2005, I guess it is, or in May and June, which is when the fugitive warrant was issued. It was issued, if you look at the warrant, which is attached to the appendix, it was issued on June 29th, I believe, which is before any of this alleged conversations or anything. Mr. Morris, could you explain something to me? Sure. Yes, ma'am. You said that the reason that Mr. Norton is entitled to absolute immunity is because the only one who could apply for the fugitive warrant is the prosecutor. I wrote that down. The district attorney. Well, the prosecutor. Why does that make it a prosecutorial function, even though it's true, rather than an administrative aspect of that which the prosecutor has to do? Because the function that's being performed is to bring the defendant before the court. It seems to me that's a fundamental element of the prosecutorial responsibility and is not a mere administrative responsibility. This isn't a question of investigating anything or of training members of the staff or things like that. It's a question of initiating the arrest which will bring the defendant before the district justice. The district justice is the one who issued the fugitive warrant in June and that's what's being followed up to. That's why I think it's a question of absolute immunity. Even if you assume that the information was entirely false, absolute immunity would still operate to preclude immunity to the district attorney. Would absolute immunity apply if, for instance, the district attorney said, I don't like this person because of his race and I know he didn't do this, but I like to hassle people like that so I'm going to get this warrant issued anyway. I don't think it would apply in that situation under the cases that have come down, Your Honor, but I don't think we're anywhere near that situation. So absolute immunity then is not absolute, is what you're saying. No, I'm saying it's absolute except where the court has created exceptions and the one that the court, as Judge Roth, you're talking about now is one that's recognized. It's a constitutional violation. That's correct. But how do you know unless you get to the factual issue? In other words, you don't know why. I mean, suppose Ms. Sand says he doesn't like women. You don't know that if you're going to say the function is a function that is entitled to absolute immunity because then you never know the reason. The court of qualified immunity is to get to the reason. But the difference here, Your Honor, is that we know that he was depleted. He was trying to get Ms. Sand, the Pennsylvanian, to proceed with the proceedings pending before District Justice Cashman. That's what he was doing and there was no animus. One doesn't know that. But it's not alleged. Judge Weiss, you were going to ask the question and you and Judge Roth both asked at the same time. Do you want to proceed? We can't see you. Mr. Corse, because the defendant here was out of state, was there any other form of warrant other than the fugitive warrant that would be applicable? Judge, you asked a very interesting question and I wish I had all the factual information to answer it. I will tell you what I've learned and I've looked at the issue you're talking about. When the fugitive warrant was issued in June and when the original warrant was issued in May, it went into a process called NCIC. I'm not sure I understand what that process is. But in any event, it's that process that resulted in Mrs. Sand's initial arrest. And by the way, there's no allegation that Mr. District Attorney Norton knew that the first arrest was for that offense. That's nowhere in the complaint. So there's another factual issue there that's missing. It's not alleged here. In any event, the best that I can tell you and it's information I've gathered, but none of it's off of the record right now, is that the marshals in Naples, Florida for some reason picked up the fact that Mrs. Sand had this warrant issued in Pennsylvania and they apprehended her in July of the year in question. How that came about would have to be explained by the Florida people. But none of that is in the complaint that's before the court here, Your Honor. Go ahead. I'd still like to have a little explanation of why she was considered a fugitive. She was considered a fugitive because there was never any arrangements made for her to come to Pennsylvania to appear for a preliminary arraignment which of course occurs before a preliminary hearing. Her complaint talks about preliminary hearings. It doesn't mention at all preliminary arraignments. I understand her claim and we have to just look at her claim for this purpose is that nobody ever told her or her lawyer that she was needed in Pennsylvania and as a result of that she didn't show up and as a result of her not showing up the fugitive warrant was issued and she ended up in jail. And was brought if I remember correctly in chains or in shackles pretty awful. All this arises out of the sale of a business. This isn't a bank robber or somebody like that. So going back to Judge Wise's question why was she considered a fugitive? The answer to that question that I have for you is that's what the warrant says. The warrant was issued by District Justice Cashman and it called At the request of Mr. Norton. No, not at all. There's no allegation here that Norton had anything to do with anything at that level, Your Honor. There's no allegation that in fact he didn't. Didn't Norton go to get the governor's fugitive warrant? Oh yes he did, he applied for it but the information came to him from District Justice Cashman's office and he completed the necessary documentation to have the fugitive warrant issued. But that included a statement that she was a fugitive. Well that statement is made Your Honor, in the warrant that was issued by Cashman. Yeah, but that clearly what the District Justice did is clearly covered by judicial immunity, there's no question about that. But I think Mr. Norton Mr. Dowling's  that Norton knew certainly should have known that there was at least a question as to whether the person who was the subject of the fugitive warrant really was a fugitive. The question before us is a simple one we don't know who's right or wrong we're not a fact finder we just want to know well does he get absolute immunity which is what Judge McClure held That's correct It's a legal question Judge McClure in his opinion very clearly says in one sentence he disregards the legal conclusions of his statements and that's the conclusions you're just talking about and chooses to arrive at his own conclusions, I think his conclusions are legally accurate and correct but that's why we're here Your Honor That's right If there was an exact case on point by the Supreme Court we wouldn't or by this court, we wouldn't be here That's correct That's right It's what makes this job interesting after 28 years It's also interesting to bring on this side too I'm sure it is Jim, do you have any more questions? No, thank you Jim? I think I've covered my points, Your Honor Thank you very much We understand your position on the position that you're putting Thank you, Your Honor Thank you Mr. Dowling Just a few brief points on rebuttal if it pleases the court There was an allegation in paragraph 85 of a complaint that the district attorney knew that the warrant was issued incorrectly and refused to rescind it That was not alleged It is alleged Can you give us an appendix page? It will help Mr. A.O. Judge Roth says page 81 So you've got help Yes You can give her part of your thing Thank you Also Mr. Court has said that Anabus was not alleged in the complaint It was alleged at paragraph 115 of our complaint Judge Roth, I don't have the site to the appendix for that I do That's 880 That's right Do you have the appendix before you, Joe? Yes As the court knows there is a strong presumption qualified immunity is sufficient and I think that the burden has not been met by the prosecutor in this case If we go your way would we put an undue burden on all the DA's and all the prosecutors in the circuit with respect to before they complete a Tugendham Warrant application Not at all We have to worry about What we don't want to do is stifle the independence and the discretion of prosecutors That's not what this case is about The complaint alleges a knowing and deliberate filing of a false statement How can we Suppose we go your way I should tell everybody We don't discuss the cases before we hear argument We each prepare them very thoroughly in our own chambers but we don't discuss them with each other I have no idea what anybody means If you are right and if we go your way and say that the prosecutor doesn't get absolute immunity for filling out a fugitive warrant application Wouldn't everyone, every Tom, Dick and Harry criminal just say file a lawsuit and say the prosecutor knew that I wasn't a fugitive How do we avoid that? Putting that burden because then, as the Supreme Court says the whole point of absolute immunity is to save prosecutors the trouble and the time and the effort of having to answer to charges like this Distinguish Ms. Sands from the bank robber or the drug pusher Or a pro se person who's had 20 charges filed I would admit Your Honor, it's a difficult distinction to make I would say that the facts of this case are more compelling Why? Because she this all arises out of her civil fraud allegation That is correct factually It does But here, we also have the added fact that the district attorney spoke with her and knew that she was not a fugitive I don't think in the vast majority of cases you will have this exact scenario particularly where the prosecutor knew her and had discussed the underlying facts of this case long before she was ever arrested in connection with this capacity as a private attorney These are very unique facts, Your Honor But how does the prior knowledge get into the issue of qualified immunity I mean, it's something to think about but I don't see how that in any way is involved in the determination of what type of immunity covers this function of a prosecutor Well, I think it goes to the issue of whether or not he can be truly objective in his evaluation of this case We write black letters We write an opinion It's an opinion for the circuit It goes no farther than that I used to say that if we sneeze the district judges blow their nose and that's done because we can't write and say because in this case the prosecutor knew Ms. Sands or had a discussion with her he's not entitled to absolute immunity. We have to do it on a categorical basis Either the application for a fugitive warrant is a judicial function, in which case it's entitled to absolute immunity or it's an administrative function in which case it's entitled to qualified immunity That's correct I go back to Judge Watt's question The facts of this case really, they go to whether he would be entitled to qualified immunity, but they don't answer the question of is he entitled to dismissal on the basis of the complaint Based upon what the Supreme Court said in Kalina I would suggest that he is not entitled to absolute immunity because that case held that a known false statement gets the prosecutor only qualified immunity How about giving us the site to that case which you didn't do in your brief Mr. Corse probably didn't get it either I know it I can distinguish it but it's not my question My apologies again, Your Honor It's 522 U.S. 118 1997 Oh, not so old Okay Well, thank you very much We thank you both It's an interesting and somewhat troublesome question that you've raised You've both done an excellent job and we will take it under advisement Thank you very much As soon as we move our papers we'll hear counsel in the Bennett cases You okay, Joe? I'm fine I'm enjoying it Well, I'd enjoy it more if you were here with us I second that thought I was fortunate to have a sitting in Pittsburgh in May It's a very pleasant sitting Well, I saw Judge Wise at the investiture of Judge Hardiman in Pittsburgh when we sat with yesterday Thank you Okay, we hear the two cases Estate of Portia Bennett versus City of Philadelphia and the Bennett's